**FARHANG & MEDCOFF**
— ATTORNEYS —

100 South Church Avenue, Suite 100
Tucson, Arizona 85701
T: 520.214.2000
F: 520.214.2001

Roscoe J. Mutz (#030696) (PAN 66604)
rmutz@farhangmedcoff.com

Tyler B. Bugden (#35166) (PAN 67458)
tbugden@farhangmedcoff.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Derek Quen Wong, an individual;<br><br>Plaintiff,<br><br>v.<br><br>White Rock Phlebotomy, LLC, an Arizona limited liability company; and Caroline Anne Lebiecki, an individual;<br><br>Defendants. | Case No.<br><br>**COMPLAINT** |

Plaintiff Derek Quen Wong ("Wong") advances this Complaint against Defendants White Rock Phlebotomy, LLC ("White Rock"), and Caroline Anne Lebiecki ("Lebiecki"), a Member and Manager of White Rock (collectively "Defendants"), alleging as follows:

**PRELIMINARY STATEMENT**

1. Wong brings this action against Defendants for the failure to pay wages for work he performed as an employee of White Rock from December 2022 through February 2023, and for their failure to honor their contractual obligations to pay Wong commissions and reimburse him for covered expenses. Due to these failures, Defendants have violated the Fair Labor Standards Act, 29 U.S.C. § 206 *et seq.* ("FLSA"), the Arizona Minimum Wage Act, A.R.S. § 23-363 *et seq.* ("AMWA"), the Arizona Wage

Act, A.R.S. § 23-352 *et seq.* ("AWA"), and their contractual obligations with Wong.

2. Wong worked as a full time W2 employee for Defendants for over four months. In that time, he only received three pay checks out of nine.

3. Over the course of six pay periods, Defendants did not pay Wong any wage or salary, and to date, Defendants have not paid Wong his wages for those six pay periods.

4. White Rock also failed to reimburse Wong for his covered expenses and to issue him commission payments pursuant to his employment agreements for work he performed for White Rock.

5. Wong brings this action to hold Defendants accountable for their multiple and repeated violations of the FLSA, the AMWA, the AWA, and their employment contracts.

## PARTIES

6. Plaintiff Derek Quen Wong is a resident of Pima County, Arizona. At all material times, Wong was an employee of Defendants who worked in Pima County, Arizona. *See* 29 U.S.C. § 203(e); A.R.S. § 23-362(A); A.R.S. § 23-350(2).

7. Defendant White Rock Phlebotomy, LLC is a Manager-Managed Arizona limited liability company that conducts business in Pima County, Arizona. At all material times, White Rock did business in Pima County, Arizona and had the authority to hire Wong, fire Wong, supervise Wong, control his schedule, control his conditions of employment, determine his rate and method of pay, and maintained employment records in connection with his employment.

8. Defendant Caroline Anne Lebiecki is a Member and Manager of White Rock who resides in Maricopa County, Arizona. At all material times, Lebiecki acted as a Member and Manager of White Rock and conducted business in Pima County, Arizona.

9. On information and belief, under the FLSA, Lebiecki was an employer of

Wong. The FLSA defines "employer" as any person who acts directly or indirectly in the interest of an employer in relation to an employee. At all material times, Lebiecki had the authority to hire Wong, fire Wong, supervise Wong, control his schedule, control his conditions of employment, determine his rate and method of pay, and maintained employment records in connection with his employment. On information and belief, as a person who acted in the interest of Defendants in relation to White Rock's employees, Lebiecki is subject to individual liability under the FLSA.

10. On information and belief, each of the Defendants gave consent to, ratified, and authorized the acts of all other Defendants, as alleged herein.

11. Defendants, and each of them, are sued in both their individual and corporate capacities.

12. Defendants are jointly and severally liable for the injuries and damages sustained by Wong.

**JURISDICTION AND VENUE**

13. This Court has original federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq.*, because this action arises under the Constitution and law of the United States.

14. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

15. This Court has personal jurisdiction over White Rock because its principal place of business lies within this judicial district, and White Rock conducts business within this judicial district.

16. This Court has personal jurisdiction over Lebiecki because she resides in this judicial district.

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1)-(2)

{00954693.1}

because White Rock is an Arizona limited liability company that does business within this judicial district, Lebiecki resides and does business in this judicial district, and all the events and/or omissions giving rise to Wong's claims occurred in this judicial district.

## GENERAL ALLEGATIONS

18. At all relevant times, Wong was an "employee" of Defendants as defined by the FLSA, 29 U.S.C. § 201, *et seq.*

19. At all relevant times, Defendants were and continue to be "employers" as defined by the FLSA, 29 U.S.C. § 201, *et seq.*

20. The provisions set forth in the FLSA, 29 U.S.C. § 201, *et seq.*, apply to Defendants.

21. At all relevant times, Wong was an "employee" of Defendants as defined by A.R.S. § 23-362.

22. At all relevant times, Defendants were and continue to be "employers" of Wong as defined by A.R.S. § 23-362.

23. The provisions set forth in A.R.S., Title 23, Articles 7 and 8 apply to Defendants.

24. Defendants, individually and/or through an enterprise or agent, directed and exercised control over Wong's work and wages at all relevant times.

25. Wong, in his work for Defendants, was employed by an enterprise engaged in commerce that had annual gross revenue of at least $500,000.

26. At all relevant times, Wong, in his work for Defendants, was engaged in commerce and/or the production of goods for commerce.

27. At all relevant times, Wong, in his work for Defendants, was engaged in interstate commerce and regularly handled goods produced or transported in interstate commerce.

28. While employed by Defendants, Wong worked as a mobile phlebotomist.

Wong's job required him to: (i) commute via automobile on roads, highways, and interstate highways; (ii) use GPS mapping software to navigate these roads, highways, and interstate highways; (iii) collect blood samples using medical products shipped via interstate commerce; (iv) process blood samples using products shipped via interstate commerce; (v) use a phone to call individuals and companies in Arizona and other states to set up new accounts for Defendants; (vi) use the internet and email to review new accounts, pursue new accounts, and update and maintain existing accounts; and (vii) use his phone, the internet, and email to communicate and coordinate with Defendants.

29.     Under the terms of the October 2022 "W2 Employment Agreement" between White Rock and Wong (hereinafter the "October W2 Employment Agreement"), White Rock hired Wong as a full time W2 employee with an annual salary of $75,000 plus 15% commission and reimbursement for covered expenses.

30.     In relevant part, the October W2 Employment Agreement provided:

> "Company [White Rock Phlebotomy LLC] shall pay to W2 employee [Wong] and W2 employee shall accept from the Company as compensation for all services to be provided pursuant to this Agreement, the sum receive [*sic*] is $75,000 annually + 15% commissions on [W]hite [R]ock Phlebotomy receivables on accounts under W2 employee. Additional compensation of $500.00 car compensation up $1800.00 expense reimbursement monthly."

31.     Under the terms of the October W2 Employment Agreement, White Rock promised to pay Wong on the 10th and 25th of each month.

32.     After completing a Form W-4, a Form A-4, and reviewing and signing White Rock's "HIPPA Employee Confidentiality Agreement," and its sexual harassment policy for employees, Wong started working for White Rock on October 24, 2022.

33.     White Rock paid Wong for the first three pay periods of his employment; namely, Wong received pay on November 10, 2022 (for the October 16, 2022 to October 31, 2022 pay period), November 25, 2022 (for the November 1, 2022 to November 15, 2022 pay period), and December 10, 2022 (for the November 16, 2022 to November 30,

2022 pay period).

34. However, on the fourth applicable pay day, December 25, 2022 (for the December 1, 2022 to December 15, 2022 pay period), Defendants failed to pay Wong.

35. Defendants also failed or refused to pay Wong on the fifth applicable pay day, January 10, 2023 (for the December 16, 2022 to December 31, 2022 pay period).

36. On January 13, 2023, three days after failing or refusing to pay Wong on the fifth pay day, Lebiecki offered Wong a promotion at White Rock.

37. Lebiecki represented to Wong that the promotion would be effective immediately if Wong signed the written offer, and his raise in salary would be "implemented and retroacted" to the previous two pay checks Defendants previously failed or refused to provide.

38. Wong understood that by signing the offer letter, Defendants would pay him his backpay (grossed up to his new salary) and would pay him prospectively on the regular payroll schedule for White Rock.

39. On January 13, 2023, Wong accepted and signed Lebiecki's written offer letter and emailed it to Lebiecki.

40. On January 25, 2023, Wong also executed a new employment contract titled "W2 Employment Agreement," whereby White Rock hired Wong as a full time W2 employee with an annual salary of $125,000 plus a 5% commission (the "January W2 Employment Agreement").

41. Under the terms of the January W2 Employment Agreement, White Rock promised to pay Wong on the 10th and 25th of each month.

42. Under the terms of the January W2 Employment Agreement, White Rock promised to pay Wong $5,208.33 gross pay per pay period before withholdings.

43. However, Defendants never paid Wong his backpay or his salary moving forward. Wong continued to work for White Rock based on Defendants' promises to pay him all wages due and owing.

44. Defendants did not pay Wong the fourth and fifth pay checks it owed him before he received the promotion, and it failed to pay him any future wages due and owing. Further, Defendants admitted in writing that it owed him backpay for wages earned.

45. Specifically, Defendants did not pay Wong the $5,208.33 it admitted it owed him (before withholdings) for the pay period applicable to December 1, 2022 to December 15, 2022.

46. Defendants did not pay Wong the $5,208.33 it admitted it owed him for the pay period applicable to December 16, 2022 to December 31, 2022.

47. Defendants did not pay Wong the $5,208.33 it admitted it owed him for the pay period applicable to January 1, 2023 to January 15, 2023.

48. Defendants did not pay Wong the $5,208.33 it admitted it owed him for the pay period applicable to January 16, 2023 to January 31, 2023.

49. Defendants also failed to pay Wong the next two pay checks it owed him.

50. Wong received no pay on February 25, 2023, or thereafter for the February 1, 2023 to February 15, 2023 pay period.

51. Wong received no pay on March 10, 2023, or thereafter for the February 16, 2023 to February 28, 2023 pay period.

52. Wong's employment with White Rock ended on February 28, 2023.

53. Wong worked for Defendants for three months without pay.

54. During this time, Wong repeatedly and consistently requested that White Rock pay him what he was owed under the terms of the October W2 Employment Agreement, Lebiecki's January 13, 2023 offer letter, and the January W2 Employment Agreement.

55. From December 2022 through February 2023, Defendants repeatedly, intentionally, and consistently failed or refused to pay Wong for the wages he earned.

56. Defendants also failed to pay Wong commissions owed under both

employment contracts and reimbursable expenses that were covered by the October W2 Employment Contract and Lebeicki's January 13, 2023 offer letter.

57. Wong successfully recruited Rios MSO as a White Rock client, yet Defendants failed to pay Wong any commissions from the Rios MSO account.

58. Rios MSO has over 12 clinics in California and one in Arizona.

59. On information and belief, the annual value of Rios MSO commission exceeds $20,000.00, because the scale of the Rios MSO account and the opportunity for revenue is substantial.

60. On January 17, 2023, Wong submitted a reimbursement request to Sara Ruthaford at White Rock via email for $283.44 in covered expenses.

61. On February 1, 2023, Wong submitted a reimbursement request to Sara Ruthaford at White Rock via email for $639.96 in covered expenses.

62. To date, White Rock failed to reimburse Wong for $923.40 in covered expenses.

**COUNT I**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**FAILURE TO PAY MINIMUM WAGE**
**(29 U.S.C. § 206(a), ALL DEFENDANTS)**

63. Wong incorporates by reference the allegations set forth in the preceding paragraphs.

64. Under the FLSA, employers must pay all non-exempt employees a minimum wage for all time spent during their regular 40-hour workweeks. *See* 29 U.S.C. § 206(a).

65. Wong worked full-time as a non-exempt employee for Defendants from December 2022 through February 2023, the period they failed to pay him any wage or salary.

66. During this period, Wong worked full-time for Defendants as a mobile phlebotomist engaged in commerce in Pima County, Arizona.

67. Wong's full-time employment during this period in which he received no pay encompassed six pay periods: (1) December 1, 2022 to December 15, 2022; (2) December 15, 2022 to December 31, 2022; (3) January 1, 2023 to January 15, 2023; (4) January 16, 2023 to January 31, 2023; (5) February 1, 2023 to February 15, 2023; and (6) February 16, 2023 to February 28, 2023.

68. Defendants failed to pay Wong on the designated pay days for each of these pay periods, and to date, they failed to pay Wong any wage or salary for these pay periods.

69. As a result of not paying Wong any wage whatsoever for six pay periods (12 weeks) during his employment under the terms of the October W2 Employment Agreement and the January W2 Employment Agreement, Defendants failed or refused to pay Wong the FLSA-mandated minimum wage. *See* 29 U.S.C. § 206(a).

70. Under 29 U.S.C. § 216(b), Wong is entitled to recover from Defendants compensation for unpaid minimum wages, an additional equal amount as liquidated damages, interest, and reasonable attorneys' fees, and costs.

**COUNT II**
**VIOLATION OF THE ARIZONA MINIMUM WAGE ACT**
**FAILURE TO PAY MINIMUM WAGE**
**(A.R.S. § 23-363, ALL DEFENDANTS)**

71. Wong incorporates by reference the allegations set forth in the preceding paragraphs.

72. The AMWA, A.R.S. § 23-363, *et seq.*, establishes a minimum wage within the State of Arizona.

73. In 2022, the minimum wage in Arizona was $12.80 per hour.

74. In 2023, the minimum wage in Arizona is $13.85 per hour.

75. As a result of Defendants' willful failure to compensate Wong any wage whatsoever for twelve (12) weeks, Defendants violated the AMWA.

76. Defendants failed to pay Wong any wage for twelve (12) weeks of full-

time employment.

77. As a result of not paying Wong any wage whatsoever for six pay periods during his employment under the terms of the October W2 Employment Agreement and the January W2 Employment Agreement, Defendants failed or refused to pay Wong the AMWA-mandated minimum wage.

78. Under A.R.S. § 23-364(G), Wong is entitled to recover from Defendants compensation for unpaid wages, an additional amount equal to twice the unpaid minimum wages as liquidated damages, interest, and reasonable attorneys' fees and costs.

**COUNT III**
**VIOLATION OF THE ARIZONA WAGE ACT**
**FAILURE TO PAY WAGES DUE AND OWING**
**(A.R.S. § 23-350, *et. seq.*, ALL DEFENDANTS)**

79. Wong incorporates by reference the allegations set forth in the preceding paragraphs.

80. The AWA, A.R.S. § 23-350, *et seq.*, establishes standards for wage payments to employees within the State of Arizona.

81. As a result of Defendants' willful failure to compensate Wong any wage whatsoever for twelve (12) weeks, Defendants violated the AWA.

82. Defendants did not compensate Wong for wages due and owing to him.

83. Defendants did not compensate Wong the $5,208.33 per pay period they owed him for the six pay periods from December 1, 2022 to February 28, 2023.

84. Defendants engaged in such conduct in direct violation of A.R.S. § 23-350.

85. As such, Defendants owe Wong unpaid wages from December 1, 2022 to February 28, 2023.

86. Under A.R.S. § 23-353(A), Wong is entitled to treble the amount of his unpaid wages ($93,749.94), plus interest thereon, and his costs incurred.

## COUNT IV
## BREACH OF CONTRACT
## (ALL DEFENDANTS)

87. Wong incorporates by reference the allegations set forth in the preceding paragraphs.

88. Under the terms of the October W2 Employment Agreement and Lebiecki's January 13, 2023 offer letter, Defendants were required to pay Wong's agreed-upon salary plus commissions and to reimburse Wong for covered business expenses each month.

89. For reasons set forth above, Defendants failed or refused to pay Wong the wages promised in the operative agreements.

90. Wong submitted multiple reimbursement requests to Defendants that were covered expenses under the terms of the October W2 Employment Agreement and Lebiecki's January 13, 2023 offer letter.

91. Defendants breached the terms of the October W2 Employment Agreement and Lebiecki's January 13, 2023 offer letter by failing to reimburse $923.40 in covered expenses incurred by Wong on behalf of Defendants.

92. Under the terms of the October W2 Employment Agreement and the January W2 Employment Agreement, Defendants owed Wong a commission for accounts closed and/or recruited for Defendants by Wong.

93. Wong successfully closed and/or recruited Rios MSO for Defendants.

94. The scale and opportunity of revenue generated through the Rios MSO account is significant because Rios MSO has over 12 clinics in California, and one in Arizona.

95. On information and belief, the Rios MSO account has generated significant revenue for Defendants.

96. On information and belief, Defendants owe Wong approximately $20,000.00 in commissions for the Rios MSO account.

97. Defendants have breached the terms of the October W2 Employment Contract and the January W2 Employment Contract because they have failed to pay Wong any commission for the Rios MSO account.

98. As a result of Defendants breach of the applicable agreements, Wong suffered significant damages in an amount to be awarded at trial.

99. Wong is also entitled to an additional award of his attorneys' fees and costs related to claims for breach of contract. See A.R.S. §§ 12-341.01 (award of attorneys' fees for breach of contract), 12-341 (award of costs).

## COUNT V
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
## (ALL DEFENDANTS)

100. Wong incorporates by reference the allegations set forth in the preceding paragraphs.

101. "In Arizona, a covenant of good faith and fair dealing is implied in every contract." Maleki v. Desert Palms Prof'l Props., LLC, 222 Ariz. 327, 333, 214 P.3d 415, 421 (App. Div. 1 2009).

102. Even if the Court determines Defendants did not breach any express provision of the agreements with Wong, Wong still prevails on the claim for breach of the implied covenant of good faith and fair dealing. See Nolan v. Starlight Pines Homeowners Ass'n, 216 Ariz. 482, 489, 167 P.3d 1277, 1284 (App. Div. 1, 2007) ("[a] party may breach the implied covenant [of good faith and fair dealing] even in the absence of a breach of an express provision in a contract by denying the other party the reasonably expected benefits of the agreement.").

103. The reasonably expected benefits of the applicable agreements included the payment of Wong's salary and commissions, in addition to reimbursement of expenses Wong incurred on behalf of Defendants.

104. Defendants deprived Wong of the reasonably expected benefits of the applicable agreements by failing or refusing to pay Wong's salary or commissions from

December 1, 2022 through February 28, 2023 and failing to reimburse Wong for expenses in the amount of $923.40.

105.   As a result of Defendants' breach of the implied covenant of good faith and fair dealing, Wong suffered significant damages in an amount to be awarded at trial.

106.   Wong is also entitled to an additional award of his attorneys' fees and costs related to claims for breach of the implied covenant of good faith and fair dealing. See A.R.S. §§ 12-341.01 (award of attorneys' fees for claims arising out of contract), 12-341 (award of costs).

## JURY DEMAND

Wong demands a jury trial on all causes of action so triable. See Fed. R. Civ. P. 38.

## PRAYER FOR RELIEF

WHEREFORE, Wong prays for judgment against Defendants as follows:

1. For the Court to declare and find that Defendants violated the FLSA (29 U.S.C. § 206(a)), the AMWA (A.R.S. § 23-636), the AWA (A.R.S. 23-§ 352), and breached the terms of the October W2 Employment Agreement, Lebiecki's January 13, 2023 offer letter, and the January W2 Employment Agreement;

2. For the Court to award Plaintiff's unpaid minimum wage damages, to be determined at trial;

3. For the Court to award compensatory damages, including liquidated damages pursuant to 29 U.S.C. § 216(b) and A.R.S. § 23-364, to be determined at trial;

4. For the Court to award an amount that is treble to Wong's unpaid wages pursuant to A.R.S. § 23-355, in amounts to be determined at trial;

5. For the Court to award prejudgment and post-judgment interest on any

damages awarded;

6. For the Court to award Wong's reasonable attorneys' fees and costs of the action and all other causes of action set forth in this Complaint pursuant to 29 U.S.C. § 216(b), A.R.S. § 23-364, A.R.S. § 12-341; A.R.S. § 12-341.01(A); and

7. Such other relief as this Court deems just and proper.

DATED this 23rd day of May 2023.

**FARHANG & MEDCOFF**

By /s/ *Roscoe J. Mutz*
    Roscoe J. Mutz
    Tyler B. Bugden

*Attorneys for Plaintiff*

{00954693.1}

14